UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LAWRENCE D. LEGANT,

                                        Plaintiff,


              v.                                         06-CV-1271


CHASE BANK USA, N.A.,
                                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States District Judge

### DECISION and ORDER

        Plaintiff Lawrence D. Legant commenced the instant action against Defendant

Chase Bank USA, N.A. alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C.  §§

1601 et seq., breach of contract, and seeking to vacate an arbitration award favoring

Defendant.  Presently before the Court is Defendant's motion for summary judgment

pursuant to Fed. R. Civ. P. Rule 56 seeking dismissal of Plaintiff's complaint, to amend its

answer to assert a counterclaim, for judgment against Plaintiff on its counterclaim, and for

sanctions against Plaintiff.

I.       FACTS[1]

        Plaintiff entered into a consumer credit contract with Defendant whereby Defendant

provided Plaintiff with a revolving credit account.  The contract included a provision that all

claims or disputes between Plaintiff and Defendant could be resolved by binding arbitration.

The original contract included an exception whereby claims less than $25,000 could be

submitted to small claims court.  In an amendment to the contract, the $25,000 exception was

removed and Plaintiff was given the option to pursue in small claims court any claim falling

_____

        [1]The following facts are taken from Defendant's properly supported statement of material facts
submitted pursuant to N.D.N.Y.L.R. 7.1(a)(3).  These facts are deemed to be true because Plaintiff failed to
file a responsive statement of material facts.

within the small claims court's jurisdiction, based on the local court's threshold rather than the $25,000 limit.  Defendant gave Plaintiff the right to reject the amendment.  Plaintiff did not exercise that right.

Plaintiff stopped paying the account.  He consulted NAES, a company that claimed it could rid Plaintiff of his $35,000 in credit card debt using only some letters and forms. NAES charged Plaintiff $2,000 for its service, which included various form letters that NAES directed Plaintiff to send to Defendant.  These form letters stated that the account had a "billing error" because Defendant failed to credit him for "prepayments".  Though Plaintiff asserted in his form letters that his billing statement was inaccurate, he was not sure of the verity of this allegation.  Plaintiff followed NAES' advice hoping to exploit a legal technicality that might help him avoid his debt.  Before consulting NAES, Plaintiff did not believe there were any errors in his account.  Plaintiff now admits that he made no prepayments and that his account contained no billing error.  Defendant responded to Plaintiff's billing inquiry.

Defendant ultimately filed a claim with the National Arbitration Forum ("NAF") against Plaintiff for the unpaid credit card bill.  Plaintiff objected with another NAES form.  The arbitrator issued an award to Defendant for $8,647.03.  This award has not been vacated or modified.  Plaintiff has not paid the award.

Plaintiff commenced the instant action asserting that Defendant failed to respond to Plaintiff's billing inquiry, wrongfully reported Plaintiff as delinquent, and that there was no valid arbitration provision in his credit card contract.  Presently before the Court is Defendant's motion for summary judgment seeking dismissal of the Complaint and also seeking leave to amend its answer to assert a counterclaim, for judgment on the counterclaim, and for sanctions.

## II.        STANDARD OF REVIEW

A motion for summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving

party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved, and all reasonable inferences are drawn, in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir.1 997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial.  The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).[2]  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).

## III.      DISCUSSION

### a.      Defendant's Motion for Summary Judgment

#### 1.  Truth in Lending Act Claims

Plaintiff argues that Defendant violated the TILA because Defendant did not respond to Plaintiff's inquiries made on or about October 29, 2004 regarding alleged billing discrepancies.  Plaintiff claims that Defendant knowingly failed to respond to the request within 90 days in violation of 15 U.S.C. §§ 1666 and 12 C.F.R. § 226.13 and is, therefore,

---

[2] The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

prohibited from collecting the balance owed on the credit card.  Plaintiff also argues that
Defendant wrongfully notified credit reporting agencies that Plaintiff was delinquent and that
filing a claim with the National Arbitration Forum ("NAF") violated the TILA, entitling Plaintiff to
damages.  Defendant moves for Summary Judgment on the Truth in Lending Act ("TILA"), 15
U.S.C. §§ 1601 et seq., claims on the grounds that there was no billing error on Plaintiff's
account and that it otherwise fulfilled its obligations under the statute.

The relevant portion of the TILA at issue states:

If a creditor, within sixty days after having transmitted to obligor a statement of the
obligor's account in connection with an extension of consumer credit, receives . . . a
written notice . . . from the obligor in which the obligor-

(1) sets forth or otherwise enables the creditor to identify the name and account
number (if any) of the obligor,

(2) indicates the obligor's belief that the statement contains a billing error and the
amount of such billing error, and

(3) sets forth the reasons for the obligor's belief (to the extent applicable) that the
statement contains a billing error,

the creditor shall, unless the obligor has, after giving such written notice and before
the expiration of the time limits herein specified, agreed that the statement was
correct --

(A) not later than thirty days after the receipt of the notice, send a written
acknowledgment thereof to the obligor, unless the action required in
subparagraph (B) is taken within such thirty-day period, and

(B) not later than two complete billing cycles of the creditor (in no event later
than ninety days) after the receipt of the notice and prior to taking any action
to collect the amount, or any part thereof, indicated by the obligor under
paragraph (2) either--

(i) make appropriate corrections in the account of the obligor,
including the crediting of any finance charges on amounts
erroneously billed, and transmit to the obligor a notification of such
corrections and the creditor's explanation of any change in the
amount indicated by the obligor under paragraph (2) and, if any
such change is made and the obligor so requests, copies of
documentary evidence of the obligor's indebtedness; or

(ii) send a written explanation or clarification to the obligor, after
having conducted an investigation, setting forth to the extent
applicable the reasons why the creditor believes the account of the

- 4 -

obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness. In the case of a billing error where the obligor alleges that the creditor's billing statement reflects goods not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction, a creditor may not construe such amount to be correctly shown unless he determines that such goods were actually delivered, mailed, or otherwise sent to the obligor and provides the obligor with a statement of such determination.

After complying with the provisions of this subsection with respect to an alleged billing error, a creditor has no further responsibility under this section if the obligor continues to make substantially the same allegation with respect to such error.

15 U.S.C.A. § 1666.

Plaintiff sent Defendant a letter claiming that there was a billing error on his account.  At deposition Plaintiff admitted that Defendant timely replied to his initial letter.  Accordingly, Defendant fulfilled its obligation to respond to Plaintiff's billing inquiry.

The TILA further provides that

[a]fter receiving a notice from an obligor as provided in section 1666 (a) of this title, a creditor or his agent may not directly or indirectly threaten to report to any person adversely on the obligor's credit rating or credit standing because of the obligor's failure to pay the amount indicated by the obligor under section 1666 (a)(2) of this title, and such amount may not be reported as delinquent to any third party until the creditor has met the requirements of section 1666 of this title and has allowed the obligor the same number of days (not less than ten) thereafter to make payment as is provided under the credit agreement with the obligor for the payment of undisputed amounts.

15 U.S.C.A. § 1666a(a).

The TILA does not prohibit Defendant from reporting delinquencies or from filing an arbitration claim based on delinquent payments.  Rather, the statute merely imposes a waiting period before the creditor may report the account to a credit agency.  Plaintiff failed to point to any evidence in the record from which it may reasonably be concluded that Defendant did not satisfy the waiting period prior to reporting Plaintiff to credit agencies or instituting arbitration.  Because no fair minded trier of fact could reasonably conclude that Defendant violated the TILA, Defendant's Motion for Summary Judgment as to count one is GRANTED.

- 5 -

## 2.  Breach of Contract

Plaintiff next contends that Defendant breached its contract with Plaintiff in seeking to arbitrate the dispute because there was no applicable arbitration agreement.  In September 2004, Defendant changed the terms of the cardmember agreement.  This "Change in Terms Notice and New Cardmember Agreement" stated in pertinent part:

> **Claim Covered.** Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy by either you or us against the other . . . arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, [or] your credit card Account. . . . This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation . . . or any other legal or equitable ground and whether such Claims seek as remedies money damages . . or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement.

Defendant also amended the small claims exception to remove the $25,000 minimum on arbitration claims.  Defendant gave Plaintiff the option to pursue any claim in small claims court falling within that court's jurisdiction.  Although given the option to do so, Plaintiff did not opt out of this provision.

Under Delaware law, a bank may unilaterally amend its credit card agreements provided it gives notice of the proposed change and an opportunity to opt-out of the proposed change.[3]  See Carmack v. Chase Manhattan Bank (USA)  521 F. Supp.2d 1017, 1024 (N.D. Cal. 2007) (citing Edelist v. MBNA America Bank, 790 A.2d 1249 (Del. Super. 2001)); see also Mackey v. MBNA America Bank, N.A., 343 F. Supp.2d 966 (W.D. Wash. 2004); Kurz v. Chase Manhattan Bank USA, N.A., 319 F. Supp.2d 457 (S.D.N.Y. 2004).  If a bank does not receive notice that the card member rejects the amended terms, the amendment becomes effective.  See Edelist, 790 A.2d at 1258.  Here, Plaintiff was given notice of the

---

[3] Pursuant to the contract between Plaintiff and Defendant, Delaware law applies to the Plaintiff's account. This contractual choice-of-law provision is valid and enforceable, see Wing Shing Products (BVI), LTd. V. Simatelex Manufactory Co., Ltd., 479 F. Supp. 2d 388 (S.D.N.Y. 2007), and Plaintiff makes no argument concerning choice of law.

proposed amendment and given an opportunity to opt-out.  Plaintiff did not opt-out.  He was, therefore, subject to the amended arbitration provision in the contract.  Under this provision, Defendant had the right to arbitrate claims less than $25,000.  Accordingly, Defendant's motion for Summary Judgment as to count two is granted.

### 3.  Arbitration Clause

In his fourth count, Plaintiff seeks to prevent Defendant from enforcing its arbitral award.  The arbitrator found that there was a valid arbitration provision and an arbitrable dispute.  To the extent Plaintiff challenges the arbitration provision, for reasons discussed supra, the arbitration provision is valid.  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006).  Because Plaintiff failed to raise grounds upon which the arbitral award should be vacated, Defendant's Motion for Summary Judgment as to count four is granted.

### b.          Defendant's Motion to Amend Answer

Defendant moves to amend its answer pursuant to Fed. R. Civ. P. 15(a) to assert a counterclaim against Plaintiff and for judgment on the counterclaim.  Plaintiff objects to the Defendant's motion to amend on the basis that the motion is untimely.  Rule 15(a)(2) provides that a court shall freely grant leave to amend pleadings "when justice so requires."  Fed. R. Civ. P.  15(a).  The Court liberally construes this directive.  Kirkland v. City of New York, 2007 WL 1541367 (E.D.N.Y. 2007).  Leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, the Court finds no undue delay.  Much of the delay in this case is due to Plaintiff's conduct.  Plaintiff's failure to comply with discovery forced Defendant to make two separate motions to compel discovery.  Discovery was not completed until June 13, 2008.

Although Defendant likely knew of the grounds for its counterclaim long ago, the Court finds that the delay is not undue amd that the motion for leave to amend is timely.  See, <u>Manhattan Fuel Co., Inc. v. New England Petroleum Corp.</u>, 422 F.Supp. 797 (SDNY 1976), <u>aff'd</u>, 578 F.2d 1368 (2d Cir. 1978)(allowing amendment two years after completion of discovery).  In any event, absent a showing of prejudice, delay alone generally is insufficient grounds upon which to deny a motion for leave to amend.  <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d Cir. 1993).

In determining whether an amendment to a pleading causes undue prejudice, courts look to "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute."  <u>Id</u>.  Here, Defendant seeks to assert a counterclaim to confirm the arbitral award.  This assertion requires no more discovery than that required by Plaintiff's initial Complaint which alleged that Defendant improperly obtained an arbitral award against him.  Plaintiff need not expend any additional resources and there is no likelihood of delay of the resolution of this action.  Plaintiff fails to identify any prejudice from asserting a counterclaim at this time.

To the extent Plaintiff may be challenging Defendant's proposed counterclaim as time-barred, the Court finds that the motion to confirm the arbitral award is timely.  The Delaware Uniform Arbitration Act ("DUAA") provides that:

> The Court shall confirm an award upon complaint or application of a party in an existing case made within one year after its delivery to the party, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the Court shall proceed as provided in §§ 5714 and 5715.

10 Del.C. § 5713.

The arbitral award was issued in August 2006.  Defendant's Counterclaim seeking to confirm the arbitral award is timely because it relates back to the original Answer served by

Defendant on October 25, 2006.[4] <u>See</u> <u>Rubin v. Valicenti Advisory Services, Inc.</u> (finding amended pleading relates back to filing of original pleading for statute of limitations purposes, because claim or defense asserted in amended pleading arose out of conduct, transaction, or occurrence in original pleading); <u>see</u> <u>also</u> <u>S.E.C. v. Montle</u>, 65 Fed. Appx. 749 (2d Cir. 2003). Accordingly, Defendant's motion to amend its answer to assert a counterclaim seeking confirmation of the arbitral award is granted.

### c.  Defendant's Motion for Judgment on Its Counterclaim

Next, Defendant moves for judgment on its counterclaim.  The parties agreed in their contract that Delaware law governs.  None of the factors provided in §§ 5714 or 5715 of the DUAA present grounds for vacating this award.  Plaintiff having failed to present a valid basis upon which the arbitral award should be vacated or otherwise not enforced, the Court grants Defendant's motion and confirms the arbitration award in the amount of $8,647.03.

### d.  Defendant's Motion for Sanctions Against Plaintiff

Finally, Defendant requests sanctions against Plaintiff.  Plaintiff's actions in this case appear to be without any justifiable basis in law or fact.  Nonetheless, the Court declines to impose sanctions absent a properly filed motion pursuant to Fed. R. Civ. P. 11.

## IV.      CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment GRANTED and Plaintiff's Complaint is DISMISSED IN ITS ENTIRETY.  Defendant's motion

---

[4]Rule 15(c)(1)(B) states an amendment relates back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out- in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The counterclaim asserted by the Defendant expands upon the allegations in Plaintiff's complaint as well as Defendant's answer that Defendant obtained an arbitration award against Plaintiff that Plaintiff has not paid.  The Answer was served on October 25, 2006, well within a year of the August 23, 2006 arbitral award.

to amend its answer GRANTED; the arbitration award in the amount of $8,647.03 is

confirmed; Defendant's motion for sanctions against Plaintiff is denied with leave to renew.

**IT IS SO ORDERED.**

Dated:   December 1, 2008

Thomas J. McAvoy
Senior, U.S. District Judge